# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEESHALOY S. THOMPSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. CIV-07-1019-D ) |
| SURBEC ENVIRONMENTAL, L.L.C., | ) ) |
| Defendant. | ) |

**O R D E R**

Before the Court is the Defendant's Motion for Summary Judgment [Doc. No. 28]. Plaintiff timely responded, and Defendant filed a reply.

Background:

Plaintiff brings this action against her former employer, Surbec Environmental, L.L.C. ("Surbec"), alleging that her termination from employment was motivated by unlawful discrimination. Specifically, she asserts claims of 1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); 2) race and national origin discrimination in violation of Title VII and 42 U.S.C. § 1981; and 3) retaliation for having exercised rights protected by Title VII and § 1981.

Surbec denies these allegations, stating Plaintiff was terminated for legitimate, non-discriminatory reasons. It seeks judgment on all claims asserted, arguing that the undisputed material facts in the record establish that Plaintiff cannot satisfy her burden of proof on any claim.

Summary judgment standards:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To dispute a material fact, the non-moving party must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for the party opposing summary judgment. *Id.* The facts and reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).

If the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322. However, a defendant need not disprove the plaintiff's claim; it must only point to "a lack of evidence" on an essential element. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The burden then shifts to the plaintiff to go beyond the pleadings and present facts, admissible in evidence, from which a rational trier of fact could find for her; conclusory arguments are insufficient, as the facts must be supported by admissible evidence reflected in affidavits, deposition transcripts, or specific exhibits incorporated in the parties' summary judgment briefs. *Ford v. West,* 222 F. 3d 767, 774 (10th Cir. 2000); *Adler*, 144 F.3d at 671-72. It is not the court's responsibility to attempt to find evidence which could support a plaintiff's position. *Id.* at 672.

Application:

It is not disputed that Plaintiff, a black female, is a citizen of Jamaica and a legal permanent resident of the United States; she holds a Bachelor of Science degree from Oklahoma Baptist University and a Master of Science degree from the University of Oklahoma. The parties also agree that, at all times relevant to Plaintiff's allegations, Surbec was engaged in the business of remediating spills and leaks of petroleum productions through the injection of chemicals, known as

surfactants, into the soil; the surfactants adhere to the petroleum products, which can then be extracted. As part of its business, Surbec analyzed soil samples in its laboratory; information derived from the analyses was used to determine the proper remediation. Plaintiff does not dispute that Surbec lab personnel were expected to handle all aspects of lab work, including coordination with the field staff, running samples, and cleaning up the work site at the end of the business day or when a lull in activities occurred.

The parties agree that, in October 2005, Plaintiff was hired as a laboratory analyst for Surbec at an annual salary of $50,000.00. Plaintiff contends, and Surbec does not dispute, that the position advertisement described the job opening as laboratory director. However, it is not disputed that, when Plaintiff was hired, she knew the position of laboratory director was held by Michiya Suzuki, a male citizen of Japan, who had held that position for four years. Plaintiff does not dispute that, at the time she was hired, Mr. Suzuki was in charge of all lab work and maintenance, and he performed almost all of the lab work; his salary was $50,000.00, the same salary paid to Plaintiff. It is also not disputed that, at the time Plaintiff was hired, Surbec planned to transfer Mr. Suzuki to an engineering position, and Surbec sought an additional lab employee who was qualified to ultimately take over all lab responsibilities performed by Mr. Suzuki. Affidavit of Surbec former Operations Manager Courtney Brackin, Surbec Ex. 1 ("Brackin affidavit"); Affidavit of Surbec former Director of Surfactant Technology Bor Jier Shiau, submitted as Surbec Ex. 2 ("Shiau affidavit").

It is also not disputed that, at the time Plaintiff was hired, Surbec had previously employed Tzu-Ping Hsu, a male citizen of Taiwan, who was employed in a part-time lab position while completing work on his second Masters Degree. After he received that degree, Surbec placed him

in a full-time position at a $40,000.00 annual salary, which was $10,000.00 less than Plaintiff's salary.

It is not disputed that the position for which Plaintiff applied was described as requiring a time commitment of 45 to 50 hours per week; Plaintiff does not dispute that she told Surbec she could devote that amount of time to the job. According to the undisputed evidence, Plaintiff was told that, if she demonstrated the ability to perform the lab work as well as direct the supervision of the lab, she would ultimately take over the responsibilities of lab operation when Mr. Suzuki moved to an engineering position.

According to the undisputed evidence before the Court, Plaintiff did not complain about her job title, salary, or job responsibilities at the time she was hired, nor did she indicate any complaint about race, gender, or national origin discrimination during the interview or hiring process. Brackin affidavit, ¶¶ 10-11; Shiau affidavit, ¶¶ 10-11. Plaintiff alleges only that she made a complaint to Dr. Shiau that Dr. Zhixun Lin had referred to her as an "unmarried black woman" who had "no business running the lab." Plaintiff does not dispute that Dr. Lin was not hired until July 18, 2006, eight months after Plaintiff began work. There is no evidence in the record that Plaintiff voiced any complaint regarding her job title or salary at any time during her employment; in fact, Plaintiff does not allege she made such complaints.

The evidence in the record reflects that, soon after her employment, Plaintiff was counseled about her tardiness and attendance; she received a written reprimand. July 27, 2006 termination letter from Brackin to Plaintiff, Surbec Exhibit 3 ("Termination letter"). In the Termination Letter, Brackin cited the prior written reprimand noting these problems; the letter also noted Plaintiff's continuing absenteeism and tardiness after the reprimand. *Id.*

The parties agree that Mr. Suzuki voluntarily terminated his employment with Surbec and that, beginning on or about December 1, 2005, Plaintiff was responsible for the lab's operation. Shiau affidavit, ¶ 13. Dr. Shiau was her supervisor; he had been employed by Surbec since 1999. According to Dr. Shiau, the lab operations declined in productivity after Plaintiff took over its operation, and he believed Plaintiff was having difficulty handling the responsibilities of lab operations. Shiau affidavit, ¶ 16.

Plaintiff does not dispute that, in June 2006, she was asked to meet with Dr. Shiau and Mary O'Kelley, Surbec's Director of Marketing and Sales, to discuss what Dr. Shiau regarded as significant lab performance problems and Plaintiff's job performance. Plaintiff does not deny that Dr. Shiau and Ms. O'Kelley discussed their concerns about Plaintiff's performance and her poor attendance. Plaintiff denies that she conceded she had failed to be timely and completely accurate in her work; however, the record reflects she admits she told them the work load was too heavy for her to complete on her own, and she was having difficulty and needed assistance. Plaintiff's responses to requests for admissions, submitted as Plaintiff's Exhibit 2.

Plaintiff does not dispute that, after her June 2006 conference with Ms. O'Kelley and Dr. Shiau, Dr. Shiau attended an industry conference, where he met Dr. Zhixum Lin. Dr. Lin is a Chinese citizen with more than 20 years experience in lab work, including experience as a lab director. Upon his return from the conference, Dr. Shiau recommended that Surbec invite Dr. Lin to interview for the Surbec lab director position. Surbec agreed and, after interviewing Dr. Lin, offered him the position. It is not disputed that Dr. Lin began work as Surbec's lab director on July 18, 2006 at an annual salary of $52,000.00.

Plaintiff does not dispute that Dr. Shiau, her supervisor, directed her to assist Dr. Lin in

5

becoming familiar with Surbec's lab operations, equipment, software and protocols. She was also asked to conduct a tour of the lab and show Dr. Lin how she processed samples and ran the lab. According to the Dr. Shiau and Ms. Brackin, Plaintiff refused to follow Dr. Shiau's instructions; Plaintiff denies this. Dr. Shiau and Ms. Brackin also state that Plaintiff failed to follow Dr. Lin's directions regarding lab operations and that she argued with him; Dr. Shiau also determined Plaintiff had changed lab protocol so that some federal regulations were no longer being followed. Shiau affidavit at ¶ ¶ 21, 22. Plaintiff also denies these statements. Instead, she contends that Dr. Lin resented her and referred to her as an "unmarried black female" who had "no business running the lab." Complaint [Doc. No. 1].

In his sworn affidavit, Dr. Shiau states that, soon after she was employed, Plaintiff engaged in arguments with Mr. Suzuki regarding Plaintiff's work assignments and the operation of the lab. Shiau affidavit, ¶ 12; Brackin affidavit, ¶ 12. On one occasion, Ms. O'Kelley, who worked in an office adjacent to the lab, reported that she heard them arguing and left her work station to intervene. Brackin affidavit, ¶ 12. Plaintiff denies that she argued with Mr. Suzuki; however, she does not dispute that Surbec attempted "to work out the differences between Plaintiff and Mr. Suzuki."[1] Brackin Affidavit at ¶ 12; Shiau Affidavit at ¶ 12; Surbec statement of undisputed fact No. 18; Plaintiff's response to Surbec's statement of undisputed facts.

As indicated herein, it is not disputed that Plaintiff was counseled on June 23, 2006 about concerns regarding her job performance and her difficulties in handling the lab operation; she does not dispute that, during the meeting, she told Dr. Shiau and Ms. O'Kelley that the workload was too

---

[1]Although Plaintiff denies Surbec's statement of undisputed fact No. 17, which describes the arguments between Plaintiff and Mr. Suzuki, she does not deny its statement of undisputed fact No. 18, which states Surbec attempted to "work out" the differences between them.

great. The evidence in the record also reflects that she indicated during that meeting that her expertise was in report review rather than lab work. July 27, 2006 termination letter, Surbec Exhibit 3. Although Plaintiff does not deny that the meeting took place and Dr. Shiau and Ms. O'Kelley expressed the stated concerns, she denies admitting deficiencies in her work or her attendance. She admits, however, that she told them the workload was too great.

Plaintiff was terminated on July 27, 2006. The Termination Letter sets out the reasons as including her continuing attendance and tardiness problems, her job performance, and her insubordination. Surbec Exhibit 3. The concerns about insubordination were based on her failure to follow Dr. Shiau's directions to provide Dr. Lin with a tour of the lab and inform him of its operations as well as her failure to perform lab work assigned by Dr. Lin. Surbec Exhibit 3. Surbec also cited a specific incident in which Plaintiff refused to provide Dr. Lin with requested information regarding the operation of an item of equipment. *Id.*

The evidence establishes that Ms. Brackin and Dr. Shiau met with Plaintiff to explain the reasons for her termination. According to them, she indicated that she was already looking for another job. Brackin affidavit, ¶ 28; Shiau affidavit, ¶ 25. Plaintiff denies making that statement. However, it is undisputed that she did not indicate to them that she believed she had been discriminated against in any manner during her employment with Surbec.

According to the undisputed evidence, the decision to terminate Plaintiff was made by Surbec after Ms. Brackin, Ms. O'Kelley, Dr. Shiau, and Dr. Lin met on July 26, 2006 to discuss Plaintiff's performance problems and her insubordination; they decided that Plaintiff should be terminated for poor performance, poor attendance, and insubordination. Brackin Affidavit, ¶¶ 26, 27. Ms. Brackin then contacted Marshall Brackin, Surbec's General Manager, who approved the

decision to terminate. *Id.* ¶ 40.

It is also undisputed that, at the time of Plaintiff's termination, Surbec's work force included five female employees and seventeen male employees; at least two females, Brackin and O'Kelley, held management positions. Brackin affidavit, ¶ 29. It is apparent from the record that Surbec's employees included individuals of varying national origins and races. Plaintiff also does not dispute the fact that, as of November 1, 2008, Surbec had no employees on its payroll.

Following her termination, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, alleging discrimination based on race, sex, and national origin as well as retaliation. *See* Amended Charge of Discrimination[2], a copy of which is submitted as Plaintiff's Exhibit 1.

Standard of proof:

Plaintiff's claims of discrimination and retaliation under Title VII are governed by the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973). *Young v. Dillon Companies*, 468 F.3d 1243, 1249 (10th Cir. 2006). Her § 1981 claims are also governed by that analysis. *Kendrick v. Penske Transportation Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000). According to this analysis, Plaintiff must initially establish a *prima facie* case of discrimination/retaliation based on her status; if she does so, the burden shifts to Surbec to present a justifiable, non-discriminatory reason for its conduct. *Id.* If Surbec presents such a reason, then the burden of proof shifts back to Plaintiff, who must show that the proffered justification for Surbec's action is a mere pretext for unlawful employment discrimination. *McDonnell Douglas*, 411 U.S. at 804.

---

[2]The original Charge of Discrimination is not included in the record before the Court.

Discriminatory discharge claim:

Pursuant to Title VII, it is unlawful for an employer to discharge any individual because of that individual's "race, color...sex, or national origin." 42 U. S. C. § 2000e-2(a)(1). Section 1981 also prohibits a discriminatory discharge based on race, and the elements required to prove such a claim are the same as under Title VII. *Carney v. City and County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008). To establish a *prima facie* case of discriminatory discharge based on race, sex or national origin, Plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge. *Zamora v. Elite Logistics, Inc.*, 478 F. 3d 1160, 1171 n. 5 (10th Cir. 2007) (citing *English v. Colorado Dept. of Corrections,* 248 F. 3d 1002, 1008 (10th Cir. 2001)). A plaintiff's *prima facie* burden in a discriminatory discharge claim is described as "light," and "only the most baseless of claims fails to satisfy it." *Zamora*, 478 F. 3d at 1171.

Because Plaintiff is a black female of Jamaican birth, the initial element of her *prima facie* burden is met because she is a member of protected classes based on race, gender and national origin. Although Surbec contends she was terminated because of her poor job performance, it does not dispute that she had the necessary job qualifications for the position of lab analyst when she was hired.

It is also not disputed that Plaintiff's employment was terminated. Therefore, the third element of her *prima facie* burden is also satisfied. Whether her position remained open at the time of her termination is not clear from the record; however, Plaintiff alleges she was replaced, and Surbec does not argue that her position was eliminated upon her termination. Construing the factual inferences in her favor, the Court will, for purposes of the summary judgment motion, infer that she

9

was replaced. Accordingly, the Court will consider the *prima facie* burden satisfied for purposes of the motion.

Accordingly, the burden shifts to Surbec to articulate a non-discriminatory reason for its decision to terminate Plaintiff. The burden of establishing a legitimate, nondiscriminatory reason for its employment action is "exceedingly light." *Montes v. Vail Clinic, Inc.*, 497 F. 3d 1160, 1173 (10th Cir. 2007). Once a defendant proffers such a reason, the Plaintiff must show "there is a genuine issue of material fact regarding whether the ...justification was pretextual." *Id.* (citing *Young v. Dillon Companies, Inc.*, 468 F. 3d 1243, 1249 (10th Cir. 2006)). To show that the proffered reason is a mere pretext for discrimination, the plaintiff must show that the reason is "'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief.'" *Id.* (quoting *Young,* 468 F. 3d at 1249). "Even though all doubts concerning pretext must be resolved in plaintiff's favor, a plaintiff's allegations alone will not defeat summary judgment. Mere conjecture that the employer's explanation is pretext is insufficient basis to defeat summary judgment." *Jencks v. Modern Woodmen of America*, 479 F.3d 1261, 1267 (10th Cir.2007) (citations omitted).

In this case, Plaintiff has failed to present evidence sufficient to create a material factual dispute regarding whether the reason for her termination was pretextual. Plaintiff's allegation that her termination was motivated by any form of discrimination is based solely on her contention that, at some unspecified time, Dr. Lin referred to Plaintiff as an "unmarried black female" who had "no business" running the lab. Plaintiff does not identify the date of this comment, nor does she state to whom the comment was made or how Plaintiff learned what he had said. Plaintiff does not allege that Dr. Lin made the decision to terminate her; in fact, the undisputed evidence shows that Ms.

10

Brackin made the decision to terminate Plaintiff and that her decision was approved by Surbec General Manager Marshall Brackin. Brackin affidavit, ¶ 27. Ms. Brackin, accompanied by Dr. Shiau, met with Plaintiff to inform her that she would be terminated; Dr. Lin was not present. *Id.* Although Ms. Brackin conferred with Dr. Shiau and Dr. Lin prior to making the decision to terminate Plaintiff, she also consulted with Ms. O'Kelley. Plaintiff offers no evidence that Dr. Lin made the decision to terminate her, and the evidence negates a factual dispute that her termination was connected to any comment that he may have made.

Although Plaintiff has alleged that Dr. Shiau and Dr. Lin discriminated against her because of her race, sex and/or her national origin, she offers no evidence to support that contention other than her own conclusory beliefs. She cites her responses to written discovery in support of this contention; however, those responses refer only to the allegations in the Complaint. *See* Plaintiff's Exhibit 2, response to Interrogatory No. 9. "To survive a summary judgment motion, however, Plaintiff must 'go beyond the pleadings.'" *Ford v. West,* 222 F.3d 767, 777 (10th Cir. 2000) (quoting *Celotex*, 477 U.S. at 324). A plaintiff cannot overcome a summary judgment motion where she "simply cites the section of [her] complaint" in support of an allegation and offers no evidence to support that allegation. *Id.; see also Adler*, 144 F. 3d at 675. Conclusory statements and allegations in the Complaint "do not suffice to create a genuine issue of material fact." *Adler*, 144 F. 3d at 675.

Plaintiff has failed to present evidence sufficient to create a factual dispute regarding Surbec's proffered non-discriminatory reason for her termination. Accordingly, Surbec's motion is granted as to Plaintiff's claim of discriminatory discharge based on race, gender and/or national origin under Title VII and § 1981.

Hostile environment claim:

Even if Plaintiff's allegations are construed to assert a hostile environment claim based on race, national origin or gender, Surbec is entitled to judgment on that claim. Hostile work environment claims are actionable under Title VII and § 1981. *Equal Employment Opportunity Comm'n v. PVNF, L.L.C.,* 487 F. 3d 790, 798 (10th Cir. 2007); *McCowan v. All Star Maintenance,* 273 F.3d 917 (10th Cir. 2001). To establish a claim based on a hostile work environment, Plaintiff must prove: 1) she is a member of a protected group based on her gender, race or national origin; 2) she was subjected to unwelcome harassment; 3) that harassment was based on her membership in the protected group; and 4) due to its severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive work environment. *Semsroth v. City of Wichita*, 304 F. App'x 707, 722 (10th Cir. 2008) (unpublished decision) (citing *Harsco Corp. v. Renner*, 475 F. 3d 1179, 1186 (10th Cir. 2007). To overcome a summary judgment motion in a hostile work environment case, Plaintiff "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment;" she must also show she was "targeted for harassment" because of her race, national origin, or gender. *Herrera v. Lufkin Indus., Inc.,* 474 F. 3d 675, 680 (10th Cir. 2007).

However, a "'mere utterance of an..epithet which engenders offensive feelings in a employee'" is not sufficient to satisfy the requirements of Title VII. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)(quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64 (1986)). "A plaintiff does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents" of enmity or "sporadic" slurs. *Id.* Instead, there must be a "steady barrage" of

12

"opprobrious" comments." *Herrera*, 474 F. 3d at 680. The Court must examine the circumstances both objectively and subjectively, and consider whether a reasonable person in Plaintiff's position would have found the atmosphere hostile. *Id.* The relevant circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Although this inquiry has been described as "quintessentially a question of fact" which is typically unsuited for summary judgment disposition, *Tademy v. Union Pacific Corp.,* 520 F. 3d 1149, 1162 (10th Cir. 2008), summary judgment may be proper where the circumstances are such that a rational jury could not find in Plaintiff's favor. *Id.* Thus, where a plaintiff offers evidence of a "few isolated incidents" of harassment, that evidence is insufficient to establish the "severe or pervasive" harassment which is actionable. *Tademy*, 520 F. 3d at 1162; *Herrera*, 474 F. 3d at 680 n. 3. Where a few incidents are sufficiently severe, however, the "cumulative weight" of those incidents may be enough to overcome summary judgment and create a fact question for a jury. *Tademy*, 520 F. 3d at 1162.

In this case, Plaintiff's contentions are insufficient to avoid summary judgment. The only racial or sexual comment she cites is the alleged statement by Dr. Lin describing her as an "unmarried black female" who had "no business" running the lab. She does not identify the date of this comment; in fact, she does not even allege that she was present when the comment was made. Assuming, for the sake of argument, that the comment is sufficiently severe to be racially and/or sexually harassing, it constitutes but a single incident.[3] Construing the allegations generously in

---

[3]Plaintiff also argues in her response brief that, "after her termination," another employee, Cheryl Newton, told her she heard others refer to Plaintiff as an unmarried black woman who had no business running the lab. This inadmissible hearsay statement cannot properly be considered at the summary judgment stage. *Fisher v. City of Las Cruces,* 584 F.3d 888, 897 n.3 (10th Cir. 2009) (citing *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1252 (10th

13

her favor, even if Plaintiff heard this comment, it is not sufficiently severe in its racial or gender-based connotation to constitute harassment creating a hostile work environment actionable under Title VII or § 1981.

The Court concludes that a rational jury could not find that, if Plaintiff proves the comment was made by Dr. Lin, it constituted racial or gender-based harassment sufficiently severe to support a hostile work environment claim. Accordingly, to the extent Plaintiff contends she was subjected to a hostile work environment based on her sex, race, or national origin under Title VII or § 1981, Surbec is entitled to summary judgment on that claim.[4]

Unlawful retaliation claim:

Plaintiff's claims of unlawful retaliation under Title VII and § 1981 are governed by the *McDonnell Douglas* burden shifting analysis. *Pinkerton v. Colorado Dept. of Transportation,* 563 F.3d 1052, 1064 (10th Cir. 2009); *Somoza v. University of Denver*, 513 F.3d 1206, 1210 (10th Cir. 2008). Thus, the Court must first determine if she has satisfied her *prima facie* burden of proof.

To satisfy her *prima facie* burden, Plaintiff must show 1) she engaged in protected opposition to discrimination; 2) her employer subsequently took action that a reasonable employee would have found materially adverse; and 3) there is a causal connection between her protected activity and the adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006); *Argo v. Blue Cross and Blue Shield of Kansas*, 452 F.3d 1193, 1202 (10th Cir. 2006); *Metzler v. Federal Home*

---

Cir.2006)).

[4]Plaintiff offers no evidence, and asserts no allegation, of any incident which she contends constitutes harassment based on her national origin. If she purports to assert a claim on that basis, on the present record Surbec is entitled to judgment as a matter of law.

Loan Bank of Topeka, 464 F.3d 1164, 1171 (10th Cir. 2006).

To show she engaged in protected opposition to discrimination, a plaintiff need not rely on the filing of a formal complaint with the Equal Employment Opportunity Commission, as protected activity may consist of "complaining informally to supervisors." *Medina v. Income Support Division,* 413 F. 3d 1131, 1135-36 (10th Cir. 2005); *Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). In this case, Plaintiff's only contention that she made an informal complaint is her allegation that she complained to Dr. Shiau about "her treatment by Dr. Lin." Response brief, p. 2. In support of this statement, Plaintiff cites her response to Interrogatory No. 9; however, that response cites no evidentiary material, and refers to her Complaint. Plaintiff's Exhibit 2, responses to Interrogatory No. 9. Other than the allegations in the Complaint, Plaintiff submits no evidence to show she complained about Dr. Lin. Even if that allegation could be construed as sufficient, however, Plaintiff fails to present evidence to show that the complaint had any reference to her race, sex, or national origin. Therefore, the Court cannot conclude that her purported complaint constituted an exercise of rights protected by Title VII or § 1981.

Assuming, for the sake of argument, that Plaintiff complained about "her treatment by Dr. Lin" in a manner that asserted protected rights, she must also present evidence to support the remaining elements of her *prima facie* case. The termination of her employment is sufficient to constitute an adverse employment consequence, thus satisfying the second element.

Plaintiff must next present evidence to show a causal connection between her exercise of protected rights and her termination. Plaintiff offers no evidence explaining when she made the complaint to Dr. Shiau, nor does she state whether it was written or oral; she does not present

evidence explaining the content of the complaint. She argues only that the complaint was made just days before her termination,[5] suggesting that this is sufficient to support the requisite causal connection.

The temporal proximity of the exercise of rights and termination is some evidence of a causal connection; however, temporal proximity is not, without more, sufficient. *Hennagir v. Utah Dept. of Corrections*, 587 F.3d 1255, 1266 (10th Cir. 2009); *Pastran v. K-Mart Corp.*, 210 f.3d 1201, 1206 (10th Cir. 2000). In this case, other than temporal proximity, Plaintiff offers no evidence to support a contention that her complaint about Dr. Lin, if made, was the cause of her termination.

In fact, the evidence in the record reflects that the termination was not based only on Plaintiff's conduct toward Dr. Lin, but was also based on Surbec's ongoing concerns about her job performance and attendance. The evidence before the Court reflects that Plaintiff was aware Surbec was concerned about her job performance at least one month prior to the decision to terminate her and several weeks before Dr. Lin was hired. Plaintiff does not dispute that, on June 23, 2006, Dr. Shiau and Mary O'Kelley met with Plaintiff and expressed their concerns about the quality of her work and deficiencies in her attendance. *See* Plaintiff's responses to requests for admission, attached as Exhibit 2 to Plaintiff's response brief. The concerns expressed by Dr. Shiau and by Ms. O'Kelley regarding Plaintiff's performance prior to Dr. Lin's employment could not have been in retaliation for Plaintiff's complaint about Dr. Lin. Furthermore, the record reflects that Dr. Shiau had been concerned about Plaintiff's job performance for some time prior to Dr. Lin's employment. Shiau affidavit, ¶¶ 16-17. The evidence establishes that those concerns were expressed to Plaintiff

---

[5]The record establishes that Dr. Lin did not begin working for Surbec until July 18, 2006, and Plaintiff was terminated approximately ten days later. Thus, any complaint about his conduct would have occurred within that time period.

16

prior to Dr. Lin's employment.

Furthermore, there is no evidence that Dr. Lin or Dr. Shiau had the authority to terminate Plaintiff. The decision to terminate Plaintiff was not made until it was recommended by Brackin and approved by Surbec's general manager. Brackin affidavit, ¶27. Although Brackin obtained the input of Dr. Lin, Dr. Shiau and Ms. O'Kelley and conferred with them prior to contacting Marshall Brackin, the record reflects that Marshall Brackin made the final decision. *Id.* To establish the causation element of her retaliation claim, Plaintiff must show that the individual making the decision to terminate her knew about her protected activity. *Hennagir v. Utah Dept. of Corrections*, 587 F.3d 1255, 1267 (10th Cir. 2009) (citing *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1195 (10th Cir. 2007). Plaintiff offers no evidence from which the Court can infer that Ms. Brackin, Ms. O'Kelley or Marshall Brackin knew that Plaintiff had complained to Dr. Shiau about Dr. Lin.

The Court concludes that Plaintiff has offered insufficient evidence to support the causation element of her *prima facie* claim of retaliation. Even if she had done so, however, that claim is subject to the same *McDonnell Douglas* analysis that governs her discriminatory discharge and hostile environment claims. As discussed herein, Surbec has satisfied its burden of articulating a non-discriminatory reason for terminating Plaintiff; the burden thus shifts to Plaintiff to show that its reason is mere pretext. For the reasons set forth in connection with her discriminatory discharge claims, the Court finds that Plaintiff has failed to submit evidence sufficient to create a material factual dispute on the issue of pretext. Accordingly, Surbec is entitled to judgment Plaintiff's retaliation claim.

Conclusion:

For the foregoing reasons, Surbec's Motion for Summary Judgment [Doc. No. 28] is

GRANTED on all claims asserted by Plaintiff. Judgment shall enter in favor of Surbec and against Plaintiff on the claims asserted in this action.

IT IS SO ORDERED this 11th day of February, 2010.

TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE